**John STREET, Petitioner,**

v.

**DEPARTMENT OF THE NAVY, Respondent.**

No. 02–3176.

United States Court of Appeals, Federal Circuit.

Dec. 6, 2002.

Before MAYER, Chief Judge, MICHEL and CLEVENGER, Circuit Judges.

PER CURIAM.

John Street appeals the decision of the Merit Systems Protection Board, No. DC0842000210–I–1, 90 M.S.P.R. 652 (January 10, 2002), sustaining the Department of the Navy's denial of his request for Law Enforcement Officer ("LEO") retirement credit under the Federal Employees' Retirement System ("FERS"). Because the board properly determined that he failed to show that LEO duties constituted the basic reason for the existence of his position, we *affirm*.

We must affirm the decision of the board unless we find that it is: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c) (2000).

Federal police officers are eligible for early retirement credit under FERS if they meet the statutory definition of a LEO. The statute defines a LEO as one who holds a position where the "primary duties" involve the "investigation, apprehension, or detention" of those suspected or convicted of federal offenses. 5 U.S.C. § 8401(17) (2000); *Watson v. Dep't of the Navy*, 262 F.3d 1292, 1297–98 (Fed.Cir. 2001).

By regulation, the Office of Personnel Management has defined "primary duties" in a three-part test. "Primary duties" are those that:

i. Are paramount in influence or weight; that is, constitute the basic

reasons for the existence of the position;

ii. Occupy a substantial portion of the individual's working time over a typical work cycle; and

iii. Are assigned on a regular and recurring basis.

5 C.F.R. § 842.802 (2000). Under the regulation, "[d]uties that are of an emergency, incidental, or temporary nature cannot be considered 'primary' even if they meet the substantial portion of time criterion." *Id.* Further, the regulation states that the definition of a LEO "does not include an employee whose primary duties involve maintaining order, protecting life and property, guarding against or inspecting for violations of law, or investigating persons other than those who are suspected or convicted of offenses against the criminal laws of the United States." *Id.* A police officer seeking LEO retirement coverage bears the burden of proving entitlement by preponderant evidence. 5 C.F.R. § 1201.56(a)(2) (2000).

In *Watson*, we stated that, "[i]n order to determine that an officer is entitled to LEO retirement credit, the officer must show that the primary duties of his or her position ... are the investigation, apprehension, and detention of criminals or suspects." 262 F.3d at 1303. "The most probative factors ... are: (1) whether the officers are merely guarding life and property or whether the officers are instead more frequently pursuing or detaining criminals; (2) whether there is an early mandatory retirement age; (3) whether there is a youthful maximum entry age; (4) whether the job is physically demanding so as to require a youthful workforce; and (5) whether the officer is exposed to hazard or danger." *Id.*

Street, like his counterparts Clinton D. Satterfield, Bob G. Roberts, and John J. Wilson in *Satterfield v. Department of the Navy,* No. 02–3165 (Fed.Cir. Dec. 6, 2002), was a GS–083–05 police officer employed at the Naval Shipyard in Norfolk, Virginia. He argues that he was prejudiced by the lack of discovery and opportunity to present a case concerning the inherent duties of his position. Street further argues that the board erred by ignoring the plain language of his position description, which supports his eligibility for LEO retirement coverage.

During a hearing before the administrative judge, Street and the other officers seeking LEO coverage offered into evidence several exhibits, and testimony from a precinct commander and other officers to support his argument that a Naval Shipyard police officer's inherent duties are comprised of LEO duties. The board also reviewed the position description, which detailed Street's primary duties as involving the maintenance of law and order, protecting life and property, and guarding against and inspecting for violations of law. All of this evidence was before the board during its decision, and Street has failed to identify any particular fact or set of facts, regarding his inherent duties, that he was barred from presenting during the hearing. Thus, we conclude that the board did not prejudice Street's ability to present his case.

We agree with the board that the testimony presented by the precinct commander, Street and other officers regarding the percentage of time spent performing LEO duties was insufficient to establish that Street's GS–083–05 position was primarily a LEO position. He did not satisfy at least the first three *Watson* factors. As observed by the board, the routine duties described in the precinct commander's and other officers' testimony, such as patrolling, maintaining law and order, inspecting for violations of law and controlling traffic did not constitute LEO duties for the pur-

pose of establishing entitlement to LEO coverage. Furthermore, there was neither an early mandatory retirement age nor a youthful maximum entry age. Although Street testified at the hearing that his primary duties involved LEO-type work, the precinct commander testified that only thirty to forty percent, on average, of the work performed by a shipyard police officer was the investigation, arrest, apprehension or detention of criminals and/or suspected criminals. Substantial evidence thus supports the board's conclusion that Street's primary duties were not LEO duties.